**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ANTHONY SAHADEO, | DOCKET NUMBER |
| Appellant, | DC-0752-13-0393-I-1 |
| v. | |
| DEPARTMENT OF THE NAVY, | DATE: August 26, 2014 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Neil C. Bonney, Esquire, Virginia Beach, Virginia, for the appellant.

Shari L. Oehrle, Pensacola, Florida, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which sustained the appellant's removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2     Effective March 8, 2013, the agency removed the appellant from his position as a GS-11 Contract Specialist (Intern) with the agency's Acquisition Intern Program at the Naval Acquisition Career Center (NACC) based on a charge of dishonest conduct. Initial Appeal File (IAF), Tab 7 at 9-13. In support of the charge, the agency alleged that: the appellant requested and obtained tuition assistance through the agency's Acquisition Workforce Tuition Assistance Program (AWTAP)[2] for three courses he did not take; and he attempted to

---

[2] AWTAP allows members of the agency's civilian acquisition workforce to receive tuition assistance for meeting education standards for certification in their designated career field. IAF, Tab 11 at 21. To participate in the program, an employee must create an online Educational Development Plan (EDP) through the agency's electronic Director Acquisition Career Management System (eDACM), which is the agency's official repository for acquisition records. *Id.* at 21, 28. After completing his EDP, the employee must obtain his supervisor's endorsement and then submit the EDP to an eDACM support specialist a minimum of 30 calendar days in advance of the first course start date. *Id.* Once his EDP is approved, the employee must review the EDP to ensure that course information is accurate and then request a Standard Form (SF) 182, funding document, via eDACM. *Id.* at 29. Notification of an approved SF-182 is emailed to the employee, who then registers for the course and provides the school with the SF-182.

mislead NACC by providing fictitious grades for those courses, knowing that he had not taken them.  IAF, Tab 9 at 3-7.

¶3    In its notice of proposed removal, the agency also set forth a narrative in support of the charge, which stated as follows:  In April 2009, the appellant enrolled in three college courses with the Florida Institute of Technology (FIT), which commenced on April 27, 2009—Managerial Accounting (MGT 5001), Contract and Sub-Contract Formulation (MGT 5217), and Procurement and Contract Management (MGT 5211).  IAF, Tab 9 at 3.  The appellant requested ATWAP funding for these courses; however, he was advised that the courses were not eligible for funding because they commenced before the approval of funding.  *Id.*

¶4    The notice of proposed removal further also stated that on June 30, 2009, the appellant requested tuition assistance for three college courses with FIT that commenced on August 24, 2009, and ended on December 4, 2009—Contract Management Research Seminar (MGT 5220), Corporate Finance (MGT 5002), and Cost Principles, Effectiveness and Control (MGT 5214).  IAF, Tab 9 at 3. The appellant's request was approved the following day, and funds totaling $4,590 were committed to, and obligated under, three separate document control numbers (DCNs).  *Id.* at 3-4.

¶5    In its proposed removal letter, the agency further alleged that in his email response to NACC's December 9, 2011 request for grades for MGT 5220, MGT 5002, and MGT 5214, the appellant stated that he received an A in MGT 5220, a B in MGT 5002, and an A in MGT 5214.  IAF, Tab 9 at 4.  NACC then requested additional information to verify these grades.  *Id.*  On December 13, 2011, the

---

*Id.*  The school will bill the agency, which remits payment directly to the school.  *Id.* at 38.  Within 45 days after completing a course, the employee must provide the agency with documentation showing the grade earned.  *Id.* at 30.  If the course is a graduate level course and the employee fails to earn a B grade or better, the employee must reimburse the agency.  *Id.*

appellant provided a website for an academic history; however, the website did not contain information for the approved AWTAP funded courses, i.e., MGT 5220, MGT 5002, and MGT 5214. *Id.* NACC then asked the appellant to provide an invoice from FIT for these courses. *Id.* In response, the appellant provided a copy of a collection letter stating that he was indebted to Williams and Fudge for a student tuition loan of $4,968.65. *Id.* NACC then contacted FIT to acquire the invoices, and FIT provided an invoice in the amount of $4,590 for Summer Term 2009, which referenced the DCNs for MGT 5220, MGT 5002, and MGT 5214. *Id.*

¶6 Lastly, the agency alleged in the proposed removal notice that on January 13, 2012, the appellant admitted to two people that he had not previously taken MGT 5220, MGT 5002, and/or MGT 5214, and stated that he was preparing to take those courses in the current semester. IAF, Tab 9 at 4.

¶7 The appellant filed a Board appeal challenging his removal and requested a hearing. IAF, Tab 1 at 2-3. He raised affirmative defenses of discrimination based on his race and national origin, and retaliation for his prior protected equal employment opportunity activity. *Id.* at 6, Tab 18 at 5.

¶8 After a hearing, the administrative judge issued an initial decision affirming the appellant's removal. IAF, Tab 28, Initial Decision (ID) at 1, 37. The administrative judge found that the agency proved the charge by preponderant evidence, ID at 3-27, and that the penalty of removal was reasonable,[3] ID at 34-36. The administrative judge also found that the appellant failed to prove his affirmative defenses. ID at 27-34.

---

[3] In the initial decision, the administrative judge noted that the parties had stipulated that there is a nexus between the alleged misconduct and the efficiency of the service. ID at 3 n.2 (citing IAF, Tab 20 at 6).

**ANALYSIS**

The administrative judge properly affirmed the agency's removal action.

¶9          In finding that the agency proved the misconduct as alleged in the notice of proposed removal, the administrative judge summarized the hearing testimony and documentary evidence relevant to the charge, fully considered the credibility of the witnesses' testimony under the pertinent factors set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), and explained why he found the agency's witnesses more credible than the appellant.  ID at 6-27. Specifically, the administrative judge found the version of events set forth by agency witnesses C.D., D.N., J.J., and D.T.[4] to be "credible and straightforward." ID at 17.   Based on his close observation of these witnesses' demeanor, the administrative judge found their statements "direct, sincere, and consistent with their prior statements of record."  ID at 17.  The administrative judge further found their testimony "internally consistent and corroborated by the testimony of other agency witnesses and the documentary evidence of record."  ID at 17.  In addition, the administrative judge "did not detect any improper bias" and he found that "the appellant failed to introduce any evidence to support a finding that these individuals had a legitimate motive to fabricate their testimony."  ID at 17.  In that regard, the administrative judge noted that apart from their interaction with the appellant via telephone and email, none of these witnesses knew the appellant nor did they have any reason to alter their version of events to harm him.   ID at 17 (citing Hearing Transcript (HT) at 72-73).   Therefore, the administrative judge credited their version of events.  ID at 17.

¶10          By contrast, the administrative judge found the appellant's testimony "incredible."   ID at 18.   Based on his close observation of the appellant's

---

[4] C.D. is a support specialist at the AWTAP help desk, D.N. and J.J. are members of the eDACM support team, and D.T. is the Chief of the NACC's Financial Management Division.  *See* ID at 7-9, 12.  The administrative judge also found that the testimony of G.B., a former support specialist at the AWTAP help desk, was "credible, reliable, and consistent."  ID at 18 n.21.

demeanor, the administrative judge found the appellant "somewhat disingenuous, insincere, and willing to alter his testimony to achieve the desired end." ID at 18. The administrative judge further found that the appellant made a number of claims that are contradicted by the weight of the credible evidence, including his claims that: (1) when he created his EDP in 2009, he did not make any of the changes reflected on the eDACM revision history[5] between April and June 2009, and that those changes were instead made by G.B.; (2) he never requested any funding for the courses at issue in this appeal through eDACM and never received an email notification that the funding requests had been approved; and (3) he never told C.D., D.N., or J.J. during their telephone conversations in December 2011 that he had taken MGT 5220, MGT 5002, or MGT 5214. ID at 18.

¶11 Regarding the appellant's claim that G.B., not he, made the changes to his EDP between April and June 2009, the administrative judge found that G.B. credibly testified that she could not have made the changes to the appellant's EDP reflected on the revision history because support specialists did not have access to the EDPs and "the students had to actually go in and make any changes." ID at 18 (citing HT at 385-410). The administrative judge also noted that G.B., C.D., and J.J. stated that the revision history tracks changes made by the student, whereas actions taken or noted by the registrar or support specialist are reflected on the registrar's notepad. ID at 18 (citing HT at 17-19, 271-72, 388-90). Thus, as the administrative judge found, the revision history in this case shows the appellant made the changes to his EDP during this time period. ID at 18.

¶12 As for the appellant's claim that he never requested any funding through eDACM for the courses at issue, the administrative judge found that all of the agency's witnesses flatly refuted the appellant's contention that G.B. generated those funding requests and credibly testified that only the student/user could

---

[5] The administrative judge explained that when an employee makes changes to his EDP, the changes are recorded in an electronic revision history, which tracks the changes in eDACM for future reference. ID at 6 n.5 (citing HT at 20-21, 272, 394-98).

generate the funding request through eDACM. ID at 19 (citing HT at 30-31, 54-56, 82-84, 263-72, 410-11). The administrative judge further found that, in light of the fact that the funding requests at issue were made on June 30, 2009, the appellant appeared to be asserting that G.B. went back into his EDP in late June 2009 and inexplicably made all of these changes unilaterally on her own initiative. ID at 19 n.24. The administrative judge found this claim "implausible on its face." ID at 19 n.24 In addition, the administrative judge noted that J.J. testified that the electronic records prove that the appellant not only generated the requests for funding but printed them out within 15 days after eDACM notified him that these requests had been approved. ID at 19 (citing HT at 282-84). In sum, the administrative judge found that "the overwhelming record evidence prov[es] that the appellant repeatedly utilized eDACM, built his EDP and requested tuition assistance via the relevant SF-182 funding requests . . . ." ID at 26.

¶13      Regarding the appellant's claim that he never told C.D., D.N., or J.J. during their telephonic conversations in December 2011 that he had taken MGT 5220, MGT 5002, or MGT 5214, the administrative judge found that all of the agency's witnesses provided specific testimony to dispute this claim. Specifically, the administrative judge noted that: C.D. testified that she expressly identified the three courses at issue when she spoke with the appellant in December 2011 and he specifically verified and confirmed that he had taken these courses; D.N. testified that the appellant had told her during their conversation in December 2011 that he had taken the courses at issue; and J.J. testified that the appellant had told him in December 2011 that he had taken the three courses identified in the SF-182s. ID at 20 (citing HT at 25, 51-52 (C.D.'s testimony); HT at 86-89, 108, 123-28 (D.N.'s testimony); and HT at 278-79, 284-85 (J.J.'s testimony)). In addition, the administrative judge found that C.D.'s testimony was corroborated by her January 23, 2012 memorandum of record and by J.J.'s testimony. ID at 20 (citing IAF, Tab 10 at 14-15). Similarly, he found that D.N.'s testimony was

corroborated by her written statement of record. ID at 20 (citing IAF, Tab 11 at 4).

¶14 The administrative judge further found that a December 12, 2011 email the appellant sent D.N. in response to her request for grades, in which he reported grades for MGT 5220, MGT 5002, and MGT 5214, is consistent with D.N.'s testimony that the appellant had told her he had taken the courses at issue. ID at 20 (citing IAF, Tab 10 at 23). The administrative judge considered the appellant's testimony that his email response to D.N., in which he provided grades for courses he had not taken, was simply a mistake inasmuch as he reported these grades off the top of his head without access to a transcript. ID at 20 (citing HT at 306-09, 379-81). The administrative judge noted that, in support of this argument, the appellant relied on a transcript he sent to J.J. on December 13, 2011,[6] which indicated that he had earned a B in MGT 5001, a B in MGT 5211, and an A in MGT 5217. ID at 20; *see* IAF, Tab 10 at 26. The administrative judge further noted that the appellant contended that those are the grades and courses he meant to report to D.N. in his email of December 12, 2011. ID at 21.

¶15 The administrative judge found that the documentary evidence the appellant relied on to support his claim, in a vacuum, is persuasive; however, J.J. credibly refuted the appellant's assertion that he sent D.N. grades for classes he had not taken in error. ID at 21. In particular, the administrative judge noted, J.J. testified that the grades he had requested from the appellant were distinct from the grades requested by D.N., and he indicated that the appellant understood that

---

[6] J.J. was assisting the appellant because, as of January 19, 2010, he could no longer access his EDP via eDACM "due to overdue grades." IAF, Tab 9 at 24; ID at 7 n.7 (citing HT at 43-44). Accordingly, on December 12, 2011, J.J. asked the appellant to provide him with an informal grade report or unofficial transcript identifying the school, course number, course name, grade, and number of credits awarded. IAF, Tab 10 at 22. On December 13, 2011, the appellant sent J.J. the transcript with grades for MGT 5001, MGT 5211, and MGT 5217 in response to J.J.'s request. *Id.* at 26.

he was seeking grades for the three courses AWTAP had not funded in 2009 (i.e., MGT 5001,[7] MGT 5211, and MGT 5217) because these were the three courses for which grades had to be provided in order to remove the appellant's EDP from a suspended status. ID at 21 (citing HT at 268-75), 21 n.26 (citing HT at 275-77, 280-85). J.J. also testified that the appellant could not have been confused under the circumstances in light of his earlier telephonic conversation with the appellant and the context of the agency's request. ID at 21 (citing HT at 268-70, 275-85). In addition, the administrative judge noted that D.N. and D.T. testified that the appellant's suggestion that he was confused and/or innocently mistaken under the circumstances is simply implausible. ID at 21. The administrative judge found these witnesses credible and rejected the appellant's argument that he provided D.N. grades for courses he had not taken by mistake. ID at 21 n.28.

¶16    The appellant argues on review that the agency's witnesses' version of the facts supported his version of the facts and that witness testimony did not play a significant role in resolving this appeal. Petition for Review (PFR) File, Tab 1 at 16-18. He contends that it was therefore unnecessary for the administrative judge to make credibility findings. *Id.* at 17-18.

¶17    We find the appellant's argument unpersuasive. As discussed above, the parties provided conflicting testimony regarding key issues in this appeal, including whether the appellant requested funding for classes that he did not take. This conflicting testimony created credibility issues, which the administrative judge was required to, and did, resolve.

¶18    In his petition for review, the appellant challenges the administrative judge's factual findings and credibility determinations, and he reasserts many of the same arguments that the administrative judge rejected in his thorough and well-reasoned initial decision. For example, the appellant reiterates his arguments below that: he did not request funding for the three classes at issue in

---

[7] The initial decision incorrectly states that J.J. indicated in his testimony that he was seeking a grade for MGT 4207, rather than MGT 5001. ID at 21 n.26.

this appeal, PFR File, Tab 1 at 8-9, and he provided D.N. with grades for these courses in error but corrected this mistake the following day, when he sent J.J. his academic record, *id.* at 22. The appellant also argues on review that the administrative judge erred in crediting G.B.'s testimony that she did not make the changes to the appellant's EDP reflected in the revision history, *id.* at 18, and in finding that agency witnesses C.D., D.N., and J.J. credibly testified that the appellant told them during telephone conversations in December 2011 that he had taken the courses at issue in this appeal, *id.* at 19.

¶19    The appellant has not shown a sufficiently sound reason for overturning the administrative judge's thorough and explained credibility findings. Here, the administrative judge considered the relevant *Hillen* factors and made explained demeanor based credibility findings and, thus, we defer to his credibility determinations. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Further, the initial decision reflects that the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions. Thus, we discern no reason to reweigh the evidence or otherwise disturb the administrative judge's explained finding that the agency proved the misconduct as alleged in the notice of proposed removal. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings where the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

We discern no basis for disturbing the administrative judge's finding that the appellant failed to prove his affirmative defenses.

¶20    The appellant's argument on review regarding his affirmative defenses consists of the following statement in the "Conclusion" portion of his petition for review: "[t]he appellant renews and incorporates his arguments contained in his previously filed Closing Brief about [the Director of the NACC's Career Management Group's] retaliation and discrimination. Unfortunately, the work

[sic] limit precluded him from addressing those specifically." PFR File, Tab 1 at 26.

¶21    The appellant's does not identify any error in the initial decision regarding his affirmative defenses and we discern none. Accordingly, we find no basis for disturbing the administrative judge's findings that the appellant failed to prove his affirmative defenses.[8]

We discern no basis for disturbing the administrative judge's finding that removal is a reasonable penalty.

¶22    The appellant does not challenge the administrative judge's finding that the penalty of removal is reasonable. In any event, we have reviewed this finding on review and discern no reason for disturbing it.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

---

[8] To the extent that the appellant claims that he was precluded from making a substantive argument regarding his affirmative defenses because of the word limitation on petitions for review set forth in 5 C.F.R. § 1201.114(h), we find such an argument unavailing. That regulation specifically provides that a party may request leave to file a pleading that exceeds the length limitations set forth therein. The appellant, who is represented by experienced counsel, failed to do so.

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:             _____
                                           William D. Spencer
                                           Clerk of the Board

Washington, D.C.